IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


ROBERT CORWIN RAYMOND,             No. 2:16-cv-00719-HZ

         Plaintiff,                         OPINION & ORDER

     v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

         Defendant.


Merrill Schneider
Schneider Kerr Law Offices
P.O. Box 14490

    Attorney for Plaintiff

Billy J. Williams
Janice E. Hebert
U.S. Attorney's Office
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

//

1 - OPINION & ORDER

Cortney Garcia
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98103

       Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff, Robert Corwin Raymond, brings this action for judicial review of the Commissioner's final decision denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). The parties dispute whether Plaintiff is incapable of using a walking assistance device, such as a cane, in his non-dominant left hand, purportedly rendering him disabled. Because the Commissioner's disability decision failed to determine whether Plaintiff had the disputed limitation, the Court remands this case for further administrative proceedings consistent with this opinion.

## BACKGROUND

Plaintiff was born on April 28, 1964, and was forty-eight years old when the Commissioner's decision was issued. Tr. 30.[1] Plaintiff has a seventh-grade education and has not earned a GED. Tr. 84–85. He has past relevant work experience as a gas station attendant. Tr. 106–07. On May 17, 2012, Plaintiff filed his application for SSI, alleging that his disability onset date was April 1, 2001. Tr. 132. His claim as initially denied on September 13, 2012, and again upon reconsideration on February 11, 2013. Tr. 132, 159. Plaintiff's first administrative hearing was held before Administrative Law Judge ("ALJ") Andrew Grace on April 18, 2014. Tr. 77. After the conclusion the first hearing, ALJ Grace ordered that an additional consultative medical exam of Plaintiff be taken and a subsequent hearing be held. Tr. 20. Plaintiff's second hearing

---

[1] Citations to "Tr." refer to pages of the administrative record transcript, filed here as ECF 13.

was held on January 9, 2015. Tr. 38. After the second hearing, the ALJ requested and obtained additional evidence based on Plaintiff's testimony. Tr. 20. On June 23, 2015, the ALJ issued a written opinion denying Plaintiff's application. Tr. 31. The Appeals Council denied Plaintiff's request for review, making the ALJ's opinion the Commissioner's final decision that Plaintiff now challenges in this Court. Tr. 5.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

At the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

At step three, the Commissioner determines whether claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets its burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his application date. Tr. 22.

At step two, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease; status post left clavicle fracture; and major depressive disorder." *Id.*

At step three, the ALJ found that Plaintiff's impairments or combination of impairments did not meet or equal the severity of one of the listed impairments. Tr. 23. In particular, the ALJ found that "[Plaintiff] uses a walking stick, but retains the ability to ambulate effectively." Tr. 23.

The ALJ formulated the following RFC, providing in relevant part that:

> [Plaintiff] has the [RFC] to perform light work . . . except that he is limited to four hours standing or walking in an eight hour day . . . . He should not engage in any overhead reaching and is limited to frequent reaching in all other directions bilaterally and frequent handling bilaterally. . . . The claimant requires the ability to change positions from sitting to standing, or standing to sitting, approximately every 30 minutes, but can do so at the workstation with no associated loss of productivity, and he would remain in the other position for approximately 30 minutes before changing back to his prior position. *The claimant also needs the ability to use a*

> *handheld assistive device such as a cane at all times when standing or walking, although his other arm would remain available to perform work tasks.*

Tr. 24 (emphasis added).

At step four, the ALJ concluded that Plaintiff was unable to perform past relevant work as a gas station attendant. Tr. 30.

At step five, the ALJ found that, after considering Plaintiff's age, education, work experience, and RFC that plaintiff could work as a small products assembler and price marker existed, jobs which exist in significant numbers in the national economy. *Id.* Accordingly, the ALJ concluded that Plaintiff was not disabled. Tr. 30–31.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). Courts consider the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

//

DISCUSSION

As mentioned above, Plaintiff raises a single challenge to the ALJ's decision: that the ALJ erred in formulating Plaintiff's RFC by not limiting Plaintiff's use of a cane to his dominant right hand. Pl. Br. at 3, ECF 14. Defendant attempts to re-cast Plaintiff's stated challenge, arguing instead that the issues before the Court are whether the ALJ properly rejected Plaintiff's symptom testimony and discounted medical evidence relating to Plaintiff's left shoulder. Def. Br. at 2, ECF 15. The Court disagrees with Defendant's characterizations of Plaintiff's challenge. The ALJ's written opinion does not discuss either Plaintiff's testimony or medical testimony as they relate to Plaintiff's purported limitation regarding his ability to use a cane in his non-dominant hand. Therefore, the case at bar does not fit Defendant's proposed analyses relating to both forms of testimony. The issue of Plaintiff's credibility is, however, embedded in his challenge. This is because Plaintiff's claim that he can use a cane only in his dominant right hand is largely based on his own testimony given at his administrative hearings. Whether Plaintiff could use a cane in his non-dominant left hand was the central issue discussed at Plaintiff's second administrative hearing and the ALJ's failure to either incorporate or expressly exclude the limitation in Plaintiff's RFC constituted a harmful error.

### I. The ALJ's RFC Findings

The issue of whether Plaintiff could use a cane in his dominant versus non-dominant hand was discussed at both administrative hearings. Plaintiff testified that he could use a cane only in his dominant hand because his non-dominant left arm had limited functionality. In the ALJ's written opinion, he expressly included the limitation that Plaintiff "needs the ability to use a handheld assistive device such as a cane at all times when standing or walking, although his other arm would remain available to perform work tasks." Tr. 24. The opinion did not specify

which hand would be available to perform work tasks. This issue is potentially dispositive of whether Plaintiff is disabled because the only two jobs that the VE testified that Plaintiff could perform both required that his dominant right hand be free to perform work tasks. Tr. 70. An individual's RFC "is the most [the claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a)(1). When determining a claimant's RFC, the ALJ must consider the claimant's own "descriptions and observations" of her limitations. 20 C.F.R. §§ 404.1545(a)(3), 404.1529.

An ALJ analyzes the credibility of a claimant's testimony regarding her subjective pain and other symptoms in two steps. *Lingenfelter*, 504 F.3d at 1035–36. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 1036 (citation and internal quotation omitted). "The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (citation and internal quotation omitted). "Second, if the claimant meets the first test, and there is no evidence of malingering, the ALJ can reject her testimony about the severity of his symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (citation and internal quotation omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), as amended (Apr. 9, 1996) (citations omitted).

At Plaintiff's first administrative hearing, the ALJ began his line of questioning by asking whether Plaintiff was left or right-handed. Tr. 84. Plaintiff answered that he was right-handed. *Id.* The ALJ went on to ask to what extent Plaintiff's left arm functioning was limited. Tr. 86–87.

For example, he asked whether Plaintiff had any difficulty reaching out in front of him with his left arm. Tr. 87. The ALJ did not ask whether Plaintiff could use a cane in his left hand. At that hearing, the ALJ's hypothetical question posed to the VE included the limitation that Plaintiff "must be permitted to use a cane at all times when standing or walking, but the opposite hand will be available to perform work activities. The individual should not engage in any overhead reaching with the dominant left upper extremity, no, I'm sorry, the non-dominant left upper extremity." Tr. 107. The ALJ remarked that several issues had been discussed at the hearing, including "the use of the cane; the dominant versus non-dominant arm; the overhead versus other types of reaching" and "the sit/stand position." Tr. 111. Plaintiff's counsel then asked the VE whether Plaintiff could perform certain jobs if every thirty minutes Plaintiff would have to use the cane and essentially be a one-handed worker. Tr. 113–14. The VE testified that such limitations would eliminate the possibility that Plaintiff could perform the jobs at issue. Tr. 114. The ALJ found that the medical record was limited and requested that Plaintiff participate in a consultative medical examination after the first hearing. Tr. 20, 125–27.

Eight months later, after Plaintiff's consultative medical exam, a second administrative hearing was held. Tr. 38. A medical expert, Dr. Eric Dean Schmitter, was present at that hearing and answered several of the ALJ's questions. The ALJ's first question was whether Plaintiff's cane use was medically necessary. Tr. 45. Dr. Schmitter replied that it was not too well documented so that he thought it was not medically necessary. *Id.* The ALJ also asked whether Plaintiff "would be limited to occasional reaching in all directions on the left side." Tr. 46. Dr. Schmitter opined that Plaintiff exhibited slightly reduce range of motion but that there was not much information to substantiate such a limitation. *Id.* When the ALJ asked Plaintiff how frequently he used his cane over the past eight months, he answered: "Quite often, pretty much

every time I go out the door and half the time when I'm in the house. I'm scared to death something's going to give in my back again." Tr. 53.The ALJ then asked: "And what hand do you usually use for the cane?" Tr. 53. Plaintiff responded: "My right one; I can't put a lot of pressure on my left one. That's where I have — and my clavicle was snapped in three different places. I can't put a lot of pressure on my left arm." *Id.*

The ALJ then posed a series of seven hypotheticals to the VE to determine what jobs an individual with Plaintiff's impairments could perform. Some of those hypotheticals included the limitation that the individual must use a hand-held assistive device, such as a cane, at all times while standing, but that the other arm would remain available to perform work tasks during that time. Tr. 63. The VE testified that both small products assembler and price marker jobs could be performed by an individual with such limitations. Tr. 64. The ALJ did not ask the VE whether using the cane in the dominant versus non-dominant hand would change his answer.

Plaintiff's attorney then asked if an individual could still perform those jobs that the VE identified with the added limitation that the individual "when standing or walking, has to hold the cane in their dominant hand." Tr. 70. The VE answered that the individual would not be able to perform either job. Tr. 70–71. The ALJ asked the VE for clarification and he repeated that an individual whose dominant hand was not useful could not perform either job. Tr. 71–72.

In the ALJ's written opinion, Plaintiff's RFC included the limitation that he would need to use a cane at all times while standing or walking, although his other arm would remain available for work tasks. Tr. 24. The opinion does not discuss the non-dominant hand limitation.

In this case, the ALJ failed to specify whether Plaintiff's use of a cane was restricted to either his dominant or non-dominant left hand. The ALJ was required to consider Plaintiff's testimony that he could only use a cane in his dominant right hand. 20 C.F.R. §§ 404.1529,

416.929. Plaintiff specifically testified that he could use only his dominant right hand to use a cane and the VE testified that such a limitation would preclude Plaintiff from performing either the small products assembler or price marker jobs. The ALJ did not reject or mention this testimony in his written opinion. The ALJ did, however, find that Plaintiff's other subjective symptom statements were incredible. Tr. 27. For example, Plaintiff's claimed level of pain was belied by his routine course of medical care, overuse of medication, exaggerated pain behavior, and mild to moderate MRI and x-ray results. *Id.* The ALJ did not find that Plaintiff's claim regarding his inability to use a cane with his left hand was incredible. As stated above, the written opinion was silent on this point.

Moreover, the ALJ did not point to any medical evidence supporting the claim that Plaintiff could use a cane in his non-dominant hand. The ALJ found that medical evidence showed that Plaintiff's upper extremity functions appeared intact and that use of a walking stick was medically necessary. Tr. 27–28. Specifically, the ALJ found that Plaintiff was limited in overhead reaching but otherwise had a normal range of motion when reaching in other directions. *Id.* The ALJ did not explain what effect, if any, these findings may have on Plaintiff's claimed limitation regarding the use of a cane. In sum, the ALJ did not provide "clear and convincing reasons" to reject Plaintiff's testimony that he could use a cane only in his dominant right hand. This error was harmful to Plaintiff because the VE testified that if Plaintiff could not use a cane in his non-dominant left hand, then he would be unable to perform the only two jobs the VE had identified. In other words, under the circumstances of that hypothetical, Plaintiff would have been disabled. Accordingly, the Court finds that the ALJ's failure to consider Plaintiff's claimed limitation constituted a harmful error. *See Stout v. Comm'r Soc. Sec. Admin.*,

454 F.3d 1050, 1054–55 (9th Cir. 2006) (quotation and citation omitted) (holding that for an error to be harmless, it must be inconsequential to the ultimate non-disability determination).

**II.    Remand**

The Ninth Circuit applies the "credit-as-true" rule for determining whether remand for an immediate aware of benefits is proper. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Each of the following must be satisfied to justify an immediate award of benefits:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Id.* Even if those requirements have been met, the district court retains the flexibility to remand the case for further proceedings, particularly where the record as a whole creates serious doubts that the claimant is disabled. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014).

Here, the Court finds that the record has not been fully developed. Further administrative proceedings are necessary to determine whether Plaintiff's use of a cane is limited only to his dominant or non-dominant hand. More generally, the Court also finds that there are serious doubts that Plaintiff is disabled. The ALJ found that much of Plaintiff's testimony was incredible and inconsistent with objective medical evidence in the record. Particularly noteworthy were Plaintiff's misuse of medication, well-document exaggerated pain behavior exhibited before medical providers, and other evidence potentially indicative of malingering. These findings also strongly support this Court's decision to remand this case for further administrative proceedings.

//
//
//

CONCLUSION

Based on the foregoing, the Commissioner's decision is reversed and remanded for additional proceedings to determine whether Plaintiff's use of an assistive device, such as a cane, is limited only to his non-dominant left hand.

IT IS SO ORDERED.

Dated this 26 day of April, 2017.

*Marco Hernandez*
MARCO A. HERNÁNDEZ
United States District Judge